Case 12-1437 Leo Abby v. Carol Howe Oral argument, 15 minutes per side. Mr. Burgerthon for the appellant. Good morning, Your Honors. Excuse me. Ross Burgerthon on behalf of Leo Abby. As Your Honors know, criminal defendants have a constitutional right to be defended by the paid counsel of their choosing. Now, there's no dispute that that right is qualified. The Supreme Court has said that trial courts have broad discretion to limit the right when it's outweighed by other considerations, such as when defense counsel has a conflict of interest, when it's clear that the defendant is somehow trying to game the system and delay the trial, or where there would be a substantial negative impact on the court's docket or prejudice the defendant in some way. But none of those things happen in this case. When Mr. Abby requested a short two-day continuance so that both of the attorneys he hired could be present for his murder trial, the trial court denied the request based almost entirely on its observation that the attorney who had showed up, James Gust, was experienced and that, in the court's opinion, he would be an effective advocate during the trial. In affirming, the Michigan Court of Appeals echoed these concerns, and after citing outdated U.S. Supreme Court precedent held that Mr. Abby's wish to have both of his lawyers present at trial was, quote, an insufficiently legitimate reason for asserting the right. Now, our contention is that both of these state court rulings are unreasonable applications of Supreme Court precedent, and specifically United States v. Gonzalez-Lopez and, in the alternative, Unger v. Serafite. Well, I mean, let me just share with you a concern I have about your argument in light of the fact that this is an AEDPA case, and that is that none of the cases that you're citing and that you've talked about involve two lawyers that the defendant wanted to have represent him. And, obviously, there has to be clearly established Supreme Court precedent that is unreasonably applied in the case. And why couldn't the calculus be significantly different in a case where the defendant has hired two lawyers, his lead lawyer is there, and I think the record shows that Piazza was definitely a secondary person on the team. His lead lawyer is there, and he gets late notice about some conflict with the secondary lawyer, and he says, we're going to go forward. I mean, maybe on direct review you win, but why don't you lose in an AEDPA case? Well, that's a good question, and I have several responses to that. First, it's not accurate that we haven't cited any multiple counsel cases. I believe that we've cited a good number of those. Supreme Court cases? Not Supreme Court cases. That's kind of what we're limited to, though. But here's the difference. If we're talking about applying a balancing test, then that's absolutely correct. Within the AEDPA framework, then it's tough to make that argument. Argument, though, based on Gonzales-Lopez is that there was a direct misapplication of Gonzales-Lopez's holding that not only the ultimate holding, which was that a wrongful denial is a structural error that warrants automatic reversal. I understand your point that the fairness thing shouldn't have been considered. Right. Let's not get diverted on that, because I think that's a discrete point from the one I'm raising. Isn't there an absence of Supreme Court authority that would show that you have to take the conflict, the unavailability of the second and secondary lawyer as seriously as the court takes the unavailability of the sole or primary lawyer in those cases? It is absolutely correct to say that the Supreme Court hasn't addressed this in the multiple counsel context. Other courts, other circuit courts, have examined Gonzales-Lopez and have applied it in multiple counsel contexts, and I think that their opinions are certainly instructive on that point. But, no, to go to your point, Judge Cathledge, there is no discrete Supreme Court case law saying you have to honor this right. Absolutely is a bright line of rule. I appreciate your candor, and your brief does a really nice job of laying out the authority and so on. But doesn't that leave you with, first of all, a substantive standard, which, as you said, and I applaud your candor, gives the trial court broad latitude, number one. And then, number two, because the AEDPA standard and the lack of specific holdings in this area affords the state courts even more discretion. Doesn't that really put you in a corner in this case that's tough to get out of? In one respect, when you're talking about sort of a balancing test in the context of broad trial court discretion, then yes, it makes it an uphill battle. But I think really the core of our argument that I want to get across is that the Supreme Court in Gonzalez-Lopez is saying that this analysis is X, not Y, and you have the state courts and the lower federal courts saying the analysis is Y. Does that matter? I mean, my experience, and I remember being on the short end of a case where I thought the writ should be granted, is that the validity of the state court's reasoning itself is not relevant, really, at the end of the day. It's whether there was a lawful rationale or an arguably lawful rationale that could have supported the ruling. Isn't that the test here? Well, I think there's plenty of case law that says when we're evaluating cases like this that all we have to go off of is the record and the reasons that the trial court judge gave on the record. So in this case, when the reasons given by the trial judge and the state court of appeals are directly contrary to a holding of the U.S. Supreme Court, then I would say that that is much more of a straightforward violation warranting a habeas grant under AEDPA than when you start getting into a balancing test. Exhaust is a prejudice case. How does that alter what I would have thought was the normal rule that you show up with two counsel, you want a continuance because you want your second counsel there? What's the Supreme Court case or any case that says the trial court doesn't have discretion about whether to grant that continuance? They absolutely have said that trial courts do have that discretion, and we've never argued that they don't. Does that mean in this case that you're in two layers of deference? It's doubly deferential. It's a little bit like ineffective assistance where you have deference to whether there was ineffective assistance and then you add AEDPA, so it's two layers of deference. Isn't that true here where you have a discretionary nature of whether to do the continuance and then looking at that through the lens of AEDPA? I think there's a key difference, Judge Sutton, because in Gonzalez-Lopez, the court took the analysis out of the ineffective assistance paradigm, which would create that dual barrier. Correct me if I'm wrong. I thought it was a prejudice case. The ultimate holding was— I didn't think it changed the question of whether there was—how the right to counsel worked. Certainly, the ultimate holding was about prejudice, but when the Supreme Court first announced the right, the explicit right to the counsel of one's choice versus simply the generalized right to counsel, that was in a case called Wheat. And the court said in that case that the essential aim of the amendment is to guarantee an effective advocate for each criminal defendant rather than ensuring he will be inexorably represented by the lawyer whom he prefers. The Supreme Court backed away completely from that rationale because if it stayed with an ineffectiveness paradigm, then you couldn't get to the end point which it reached on prejudice because the ineffectiveness— I'm not trying to throw this into ineffective assistance. I'm not saying that. I'm not saying that's how you look at whether there was a violation of the right to counsel. That's not my point. My point is it's an analogy. They're not the same, but the analogy is whether to grant a continuance to account for having your second counsel at trial is discretionary. I think you're agreeing with that even though it implicates a constitutional right. So that's one layer of deference. And then the second layer of deference is AEDPA, and the U.S. Supreme Court has been very tough. When you get yourself into two layers of deference, you're a bit of a magician as a lower court judge if you can find your way around all that. So you have to be really helpful to us if you want us to do that. And I certainly appreciate that, Judge Sutton, and have used AEDPA to my benefit many times arguing from the other side. So I am acutely aware of the barriers that it erects. So I think, though, that our best argument here is that there was this straightforward misapplication of what the court says the analysis has to be. You're right that there's great discretion afforded to trial courts, and there's the hurdle posed by the just overall AEDPA framework. It's an uphill battle, for sure, to argue against that. Well, maybe the thing to be specific about is what's the actual thing the Michigan Court of Appeals did wrong in thinking about why there should have been an abusive discretion and not granted continuance? I would say two things. First, the Michigan Court of Appeals said that Mr. Abbey's wish to ensure that he had proper representation by having two attorneys present was an insufficiently legitimate reason for asserting that right. That runs directly contrary to the language in Gonzalez-Lopez that says defendants have a right to be represented by the counsel he believes to be best. How far does that go? I guess I'm getting back to some other questions here, but let's say I'm a particularly either wealthy or concerned criminal defendant, and I want three lawyers. Right. I want my trial specialist, I want my law guy, and I want an appellate guy there, too, just to make sure the appellate person's protecting my record, too. Do I, as the trial judge, then have to sit there and say, okay, give me the schedule for all of your lawyers and make sure they're all available on this day? I mean, where's the end game to that, and where does the Gonzalez case talk about two lawyers? Number one, the short answer is Gonzalez doesn't, and the end game is that. Or three lawyers. Right. So, obviously, if you have a rich defendant, you have sort of an OJ-type scenario where there's a huge dream team. Then that's where the district court's discretion comes in, and the Supreme Court has acknowledged that courts have discretion to control their docket. And the more lawyers, certainly, as that moves further down the continuum, then I would submit that the trial courts would have even more discretion. But it's important to recognize that that's not the case here where we had two lawyers. This is the most serious offense that someone can be charged with, and the requested delay was only two days. The Seventh Circuit has said recently that given the significance of this right to the choice of counsel, a delay of up to a month was legitimate. I'm betting that's a one-counsel case, though. I don't know off the top of my head, but I'm betting it is. Well, I believe, actually, and if I am wrong, I will correct myself in the rebuttal, but that that was a two-counsel case. Is that the Easterbrook decision? What's that? Is that the Easterbrook decision? No, the Easterbrook decision is Rodriguez v. Chandler. The decision I'm talking about is United States v. Sellers. That was a Rovner opinion with Justice O'Connor sitting on the panel. And the court there said that generic concerns about continuances are not enough because of the significance of this Constitution. They said there was a constitutional right to a continuance of up to a month? Tell me exactly. Did you have your second lawyer present? I mean, what was the reason for the continuance? No, the reason for the continuance, I don't remember the specific reason, but the court's exact quote was, even the inconvenience of pushing a trial back a month or so can easily be outweighed by a defendant's interest in having counsel of choice. Now, I don't remember specifically if that was a two-counsel choice. We have cited multiple two-counsel cases. I would refer the court to United States v. Laura, a decision from the Third Circuit where the counsel that showed up was lead counsel and the counsel that did not participate was simply local counsel, so similar to our case in that Gust had characterized himself as lead counsel all along. So you have a reversal based on abuse of discretion flavored with right to counsel with respect to the second counsel? Yes, yes, and United States v. Laura, and I'd say that's one of the most helpful cases, and we quote that extensively in our opening brief. So Laura's the Third Circuit, is that what you said? Third Circuit. And the Seventh Circuit one? The Seventh Circuit case that I just referred to is United States v. Sellers. Sellers, okay. That I do not believe is cited in our briefs. The Rodriguez v. Chandler case is the Easterbrook opinion that I was talking about. But that's not about continuances, that's just about, you know, why would the government restrict you if you wanted to have as many counsels as you want? Well, and there was a broader question of what was the significance of Gonzalez-Lopez, and the panel was facing the same argument that you're facing now, that this is just a case about prejudice, but he said, no, Gonzalez-Lopez is not simply a refinement of harmless error analysis, that it was a decision that addressed both the defendant's legal entitlement and the structural error analysis. So where we're arguing the error is here, from an AEDPA standpoint, is with respect to Mr. Abbey's legal entitlement. I'm sorry, I see that I'm out of time. No, it's based on our questions and good answers. But you are out of time. But let's just make sure. For now. For now. But let's just make sure. Wait, wait, no, stay there. Does anyone want to follow up? Because I'd much rather do it now, so if the government… I just have a factual question. And we could not find anything about this in the record. Part of the issue here is so the record isn't – we had this in the previous case too – the record isn't all you'd want it to be. And there's all this off-the-record discussion, and some of it gets memorialized on the record, and some of that is probably on the trial judge, some of that is probably on your client's counsel, because they really have the obligation to make a record to preserve an argument. But this is a question. Maybe you know the record better than I've been able to study it. But what became of Piazza? In this case, the judge did not remove Piazza. Piazza just attended to his other business. Did he ask for a continuance in the other case? Is there anything in the record that tells you whether he tried to show up here? There's nothing in the record about what he did in the other case, and I have searched the record intently to see what his role was going forward in this case. I was unable to find that he had any participation that put him on the record to the extent that he was making arguments that were transcribed. But I think the basic point is that given Gus and Piazza's arguments, when they were arguing for a continuance, Piazza never said that he refused to represent Mr. Abbey. And I think it's clear that had the court allowed the continuance, that Mr. Piazza would have been involved in the trial. But there is no evidence in the record to answer your question, Judge Dow, that Piazza was involved later on after the trial. Or that he was told the judge had a two-day trial, and your client's trial was a seven-day trial, and there's nothing in the record that shows Piazza showed up on day three? Nothing I could find. So if you're telling me you confirmed that, then at least I know my research. No, I haven't seen it, and I wasn't there, Judge Dow. But no, nothing that would have caused him to be transcribed into the record. Okay, very good. I cannot say, on the other hand, though, that he was not present in some capacity lending his advice. Doesn't say one way or the other, then. Okay, very good. Thank you. Thank you. Anybody else? Okay. All right, thank you. Mr. Pacific. Thank you. May it please the Court, Dean Pacific, on behalf of the Appellee Ward and House. As defense counsel agrees, I think Gonzalez-Lopez continued to recognize the broad discretion that trial courts have in addressing requests for continuances, including the Morris v. Slappy rule, which said that only an unreasoning and arbitrary denial of a request for continuance could violate the right to counsel. So we really do have the sort of double-deference case that the Court was talking about in the questions to defense counsel. You have the deference afforded under Morris and preserved under Gonzalez-Lopez to the trial court, as well as, then, the AEDPA deference as the lender. It sounds from counsel that some momentum, though, is building up for this theory, right? He's got this Third Circuit case and the Seventh Circuit case. I know it sounds like one of them wasn't cited, so maybe you don't know it, but do you know about either of these cases, either the Third or Seventh Circuit one? I'm aware there are some lower court cases that deal with those issues and also aware that there's no Supreme Court precedent on point that addresses it, which I think is the critical point for the defendant's appeal here. And I think what is important is what the record shows about what the trial court had in front of it when this request happened. It's a very short sort of oral opinion from the court, but we are, I think, appropriately to look at the whole record to see what the court had in front of it. I think the most important fact that the court had in front of it as it addressed this request is the fact that Mr. Gust was present and Mr. Gust was, in fact, counsel of choice for the defendant. He was the first attorney that the defendant had retained. He was there, and he was prepared to present the trial. The issue isn't so much whether or not Mr. Gust is effective. The trial court mentioned that, and I'm sure Mr. Gust appreciated the flattery. The point is Mr. Gust was there, and he was defendant's choice of counsel, and he was ready to go. Isn't it true, though, I mean, the downside of a delay was awfully modest? Well, that's not clear, Your Honor, from the record. I know the defendant characterized it as just a two-day continuance, but the record is not clear that that would have been the result of a continuance here. Mr. Piazza's schedule was such that he could have showed up in two days. It's not clear, if there's anything one way or the other in the record, that that would have worked on the court's schedule. The court had this set for a two-week trial. That's a pretty big block of time to try to move around on a trial court's schedule. So two weeks, that's 10 trial days. The defendant notes that it only ended up being eight trial days, but, of course, the trial judge didn't know that was going to be the case at the time he was facing the request. Most times trials go longer. That's almost two weeks, right, exactly. And my experience has certainly been they're more likely to go longer than shorter. And so it's not clear that it would have been easy for the court to move this two-week block into another place on its calendar just two days back. The prior adjournments, and there had been three others, all moved the case back three or four months at a time. Mr. Abbey had been arrested initially in November of 2003. We were in February of 2005 here on this fourth scheduled trial date when this request for continuance came up at the commencement of trial. And at the commencement of trial, again, Mr. Gust was there and he was ready to go. He was not being foisted upon Mr. Abbey. He was the attorney of his choosing. But don't you think there is a constitutional right to more than one counsel? That question might be presented if you had a situation where you had a defendant who was able and willing to pay for private attorneys and had to, and the court, through some error of law, prevented him from having a second attorney, something like Gonzalez-Lopez, where the court erroneously applied ethical rules and Pro Hoc Vitae admission rules to wrongfully deprive the defendant of a counsel who had a right to be there. But here you have a situation where the second attorney, undisputedly, is just literally a second attorney. I don't know what that means, just a second attorney. I mean, it's also, I don't know why you need just. It's a second attorney, and if you have a constitutional right to more than one, you're two counsels of choice. There's no evidence in the record that Mr. Abbey intended Mr. Piazza, the second attorney, to do anything other than observe the trial. I don't know about that. I mean, Mr. Abbey himself seemed to have a lot to say of what he thought and how important Piazza's role was. I want all the angles covered. What he had said, again, he reiterated his desire to have Mr. Gust represent him, so there's no question that he wanted Mr. Gust to be his trial counsel. He talked about how he respected him, how he honored his work on his behalf. And all he said about Mr. Piazza, that he just wanted a second attorney there to cover all the angles. And what the record shows is that there was this division of labor, at least understood between the attorneys, that Gust was trial counsel and that Piazza would handle motions, which he had done already. Defendant indicates that he may not have been fully aware of that division of labor, but he also never objected to it. He never said, and he did speak directly to the trial court about this, he never said, well, wait a minute, I thought Piazza was going to cross-examine this witness or examine this witness or take some other active role in the trial. The only indication, even now in the appellate briefs, is that, well, it would have been nice to have him there because if he was handling motions, he might have a better sense for how to handle the motions, much like Judge Dowd, your question about the legal attorney and the appellate attorney and so on. There may be some advantages to that, but again, those have to be balanced against the court's right to control its docket. But he never indicated that he had a— If you have a right to more than one counsel, I don't understand why it should make such a difference that someone is, quote, lead counsel. I mean, you could have John W. Davis as your backup counsel, and the reason he's there is you don't want him to do the cross-examination, you can't pay for that, but you want someone to tell you when you should stop the trial and accept the plea. So that judgment is probably more important than anything the so-called lead counsel was going to do. I think the fact of designating someone perhaps as a second attorney or a motion attorney or something like that is relevant as one of the factors the court can consider under the broad latitude it has under Morris and preserved under Gonzalez in deciding whether or not this is a reasonable request, whether or not it's one the court is going to grant. And it also goes to the question of the unreasonableness of the delay and the timing. This was a last-minute request. This came up on the morning of trial. And the defendant characterizes it as being sort of something beyond his control, that he was surprised. And I think that there certainly may be some truth to that in that he was subjectively surprised that morning. But on the other hand, I think the record is clear that he does bear at least some of the fault for the slow timing here. These were his privately retained attorneys. He had retained Mr. Gust 15 months earlier. He had retained Mr. Piazza 10 months earlier. If he had not in all that time communicated to them his desire or his direction that he wanted them both to be present at trial, he certainly has to bear at least some of the fault for that delay. I'm sorry. Please go ahead, Judge. Is there some significance to the fact that the trial judge did not remove the second counsel, Piazza? In a sense, we don't know what happened in the record. Obviously, you go back and you wish the record were different. You wish there was something in the record that said, he sent Piazza down the hall to the other judge to ask for continuance there because that's a two-day trial and he had a two-week trial. To me, if you're trying to work this out among judges, that's what you might do. We have nothing in the record of that. But what we also don't have is this trial judge removing Piazza. He sort of left it on Piazza, it seems to me, to either get a continuance or you'll have to live with the fact that you won't be here in this trial. But is that legally significant? I think it's highly significant because that's how it distinguishes the case from Gonzalez-Lopez where the removal of the attorney was based upon a legal error by the court who misapplied the ethical rules and misapplied the Pro Hoc Fice admission rules and took away from the defendant the first choice of counsel that he wanted to have at the trial. There's none of that here. And again, I look for the same things in the record, too, to try to see what happened. There's no indication that I can find in the record as to whether Mr. Piazza was appearing afterwards on the third day and beyond or, frankly, what direction he had from the defendant about that from that point forward. So we had all these factors present. We had the fact that this was the fourth request for a continuance. We were now 15 months past the individual's arrest on the fourth trial date, looking at a fifth trial date. Not at all clear that it would have been as easy, as defendants suggest, to move this two-week trial. I think in light of all of this, and again, I think most importantly, the fact that the defendant did have trial counsel of his choosing there and prepared to conduct the trial and did, in fact, conduct the trial on his behalf, that we cannot conclude that no fair-minded jurist, given the broad latitude that he had under both Morris and preserved under Gonzales-Lopez, could have denied this request for a continuance. So a court in the state of Michigan submits that the petition was properly denied and the lower court ruling should be affirmed. I'll just ask you a question about the ineffective assistance issue with respect to the objection about the pre-arrest silence. As I understand your argument, you're saying that the Supreme Court has since held that there would be no constitutional violation when a prosecutor comments on unworn pre-arrest silence. Is that pretty much your argument? Correct. Miscellaneous case. And that, to me, doesn't really seem to answer an ineffective assistance argument. I mean, as I understand Mr. Bergethon's argument, it is that at the time of this trial, there was a circuit split on this issue. Our circuit had said it is a constitutional violation. Mr. Gust should have known that, and he should have objected. And there was no strategic reason whatsoever to objecting to this so-called running theme throughout the prosecutor's comments. Why isn't that correct? I mean, who cares if it's right or wrong 12 years later? It was a good objection at the time that was left on the table. Well, the short answer to that is that the Supreme Court addressed that question in Lockhart. Is that the later case? Lockhart is actually an earlier case in Salinas, but it's a case in which the court held that an objection that would have been meritorious at the time of trial but that's now not meritorious under current law, you don't reverse because there's no prejudice, essentially. And this court had the same holding in the Evans v. Hudson case that was cited. And I guess the shortcut to the analysis is simply to say, well, what's the remedy? I mean, if you say that it was ineffective assistance because you didn't make this objection that's now invalid, do you send it back for another trial where he's allowed to make this? I'm sorry, the evidence, you know, present the evidence. He can present the same evidence and he can present the same argument again without objection because it's now clear that that objection would be invalid. There's no prejudice. That's a correlate to when the Supreme Court says what the law is, that's what the law always was? In a sense. But I think in a more practical matter, I don't think the court explicitly says this, but I really think the practical consideration is the one I just highlighted. I think you're saying Lockhart stands for the – well, maybe it's not Lockhart, but Judge Kethledge is right about it still shows there could have been a prong one problem. Well, but it gets to the prong two analysis. It's a prejudice. It's an indicative of prejudice. It doesn't say anything about whether the objection shouldn't have been made. It should have been made. Right, but I think you're exactly right. It comes down to the prejudice analysis because in the end, where is the prejudice if you send it back for a new trial if that's the remedy for the constitutional violation and the exact same trial, including that evidence and including that argument, can be presented again because under the law that we'll be controlling at that new trial, it's perfectly acceptable and there's no prejudice. Is that how we measure prejudice? I thought we measured prejudice kind of within the bounds of the record in the trial that happened, not some trial that might happen. I mean, let's say there was some critical witness who has since recanted or there's some, you could have all kinds of intervening circumstances that would change the record in a second trial so that you could have a different outcome for some different reason, right? Well, the Supreme Court in Lockhart says that that's the rule in this court. I need to read that case apparently. And I have to acknowledge defendant's counsel's candor and he was the one who brought those to the court's attention in his reply brief. But the last thing I'll say about this, unless there are further questions, is that even without Salinas, the defendant in this case would have had a very difficult time meeting the prejudice showing under Strickland where there was evidence of the flesh and DNA of the victim on a saw that he had borrowed on or about the day the individual disappeared and where his fingerprints and palm prints were on and in the bags that contained the victim's body parts. I think it would have been a very difficult prejudice showing in any case. Just back to the first argument, just out of curiosity, how would this case have come out? Everything's the same except this. He asked for continuance for Piazza. The judge says, come on, I've already got the jury here. Don't make me do this. And then he says, you know, I've paid this guy a million dollars. He's not my lead counsel, but I've invested a million dollars in this guy. I need him there. I trust his judgment, so forth and so on. Sorry, the million dollars is gone. At a million dollars, I might have expected Mr. Piazza to work harder and get any other trial adjourned. All right, but that's changing the hypo. I think it would be a factor for the court to consider, but I think that's a given in essence that we're talking about paid counsel in these cases to begin with. So it's recognized that you're talking about an individual who's got a privately retained attorney that they've paid, and still the court under Gonzales-Lopez preserves the discretion of the trial court to consider all of the factors. All right, fair enough. Did you have another? No, thank you. Okay, thank you, Mr. Pacific. Mr. Bergeson, I think you've got a few more minutes here. Thank you, Judge Sutton. I'd like to briefly address a couple points that Mr. Pacific made. First, I think it's wildly inaccurate to say that Mr. Gust was my client's counsel of choice. It's been clear throughout the record that Gust and Piazza were Mr. Abbey's counsel of choice. Well, he chose Gust. Let's put it that way. He did choose him, but that's only stating half of the equation because he also independently hired Piazza, and I think it would be a very different situation if Gust, on his own accord, brought Piazza in, if Piazza was maybe an associate or Gust had an arrangement, hey, I need some extra help with this briefing. We have to understand that Mr. Abbey is a layperson, and when a layperson is facing a murder charge and they want a defense team, they envision their lawyers being active at trial,  attorneys made on the first day of trial when Piazza didn't show up, that suggested that Piazza would not be active in the trial. In fact, Mr. Piazza was heavily active in the pretrial proceedings. When the court was rescheduling the trial at one point because of a continuance, it did it around Mr. Piazza's schedule so that he could be present at trial. Mr. Gust never indicated that he would be trying the case alone, and even during the trial when this was being discussed, Gust said, quote, that it was clear and plain that Piazza intended to participate in trial. So it's very important to acknowledge, I think when we start talking about, yes, he had one of his choices there, then we're sort of collapsing the analysis back into sort of an effectiveness analysis because we're saying that, well, one of these attorneys could do a good job. And the Supreme Court spent a lot of time talking in Gonzales-Lopez about the reason that it's a structural error to deny counsel of choices because we can't really quantify how things would have gone differently if the other attorney wasn't present. And in this case, Mr. Piazza was the attorney that, by all indications, took the lead role with legal issues and motions prior to trial. Certainly it should be obvious why that would be helpful during the trial for purposes of formulating objections or just for giving Mr. Gust general advice about how to proceed with the trial. I'd also like to say that I'm not sure it's an important distinction that the court didn't make an outright legal error such as in Gonzales-Lopez denying an attorney pro hoc admission when that was clearly not the case. I think the right can be violated without an outright legal error such as in this case. There's broad discretion, but the discretion is not limitless. We wouldn't have the rule that sort of mindless adherence to scheduling constitutes a violation of the rule if the discretion was endless. And so our point was here that even aside from Gonzales-Lopez, which we contend was directly misapplied, on the information that the trial court had that this was an unreasonable balancing of the factors arrayed in Mr. Abbey's favor for the continuance. So unless the court has any more questions, we would urge the court to reverse and grant habeas. No, thank you, though, to both of you for your helpful briefs and oral arguments. Mr. Bergeson, I see you're a court-appointed counsel. We really appreciate it. You did a terrific job, and your client's very lucky, and so are we. Thank you. It was my privilege. We hope to see you back. Appreciate it. The case shall be submitted, and the clerk may call the last case.